IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CardioGrip Corporation,
et al.,

        Plaintiffs,

        v.                     Case No. 2:06-cv-996

Mueller and Smith, L.P.A.,
et al.,

        Defendants.


<u>OPINION AND ORDER</u>

This is a diversity action for legal malpractice filed by
plaintiffs CardioGrip Corporation, CardioGrip IPH, Inc., and
Intermountain Management Group, Inc. against Mueller and Smith,
L.P.A. and Mueller, Smith and Matto, L.P.A.  Plaintiffs are Idaho
corporations.  CardioGrip Corporation is a business formed by
Intermountain Management Group to manufacture and market the
"CardioGrip" product, an isometric hand-held exercise device used
to treat hypertension.  CardioGrip IPH was formed by Intermountain
Management Group to hold any intellectual property, including
patents, related to the CardioGrip device.  Defendant Mueller and
Smith, a law firm located in Columbus, Ohio, is a legal
professional association established on June 28, 1985, and Mueller,
Smith and Matto, also located in Columbus, Ohio, was established on
August 2, 2006.[1]  Plaintiffs assert malpractice claims against each
of the defendants, alleging that defendants were negligent in
failing to ensure that maintenance fees were paid to the United

---

[1] Mueller, Smith and Matto was not in existence at the time of the alleged
acts of malpractice.  Presumably it is named as a defendant because of its status
as the successor association of Mueller and Smith.

States Patent and Trademark Office ("USPTO") on two patents which had been assigned to CardioGrip IPH, thereby resulting in one patent being lost to the public domain, and the other being lost to the public domain for a period of two years.  Defendants have filed a motion for summary judgment on plaintiffs' claims.

I. Plaintiffs' Motion to Strike

Plaintiffs have filed a motion to strike paragraph 10 of the affidavit of Jerry K. Mueller, Jr., offered by defendants in support of their motion for summary judgment.  In that paragraph, Mueller states:

> Based on my education, experience and training, my personal knowledge, and my review of records and pertinent file materials, Mueller and Smith A Legal Professional Association and Mueller, Smith and Matto A legal Professional Association did not represent or perform legal services at any time for CardioGrip Corporation, CardioGrip IPH, Intermountain Management Group, or Steven M. Wood.  Thus, an attorney-client relationship did not exist between Mueller & Smith and CardioGrip.

Plaintiffs argue that this constitutes a conclusory expert opinion about an ultimate issue in the case which may not be considered in addressing the motion for summary judgment.

Under Fed.R.Evid. 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, when offered in summary judgment proceedings, an expert opinion must be more than a conclusory assertion about ultimate legal issues.  Williams v. Ford Motor Co., 187 F.3d 533, 543 (6th Cir. 1999).  The expert opinion must set forth facts and include a line of reasoning arising from a logical foundation, rather than simply supplying a bottom line.  Brainard v. American Skandia Life

<u>Assurance Corp.</u>, 432 F.3d 655, 664 (6th Cir. 2005).

Looking at Mueller's affidavit as a whole, Mueller states that he is the managing principal of the defendants, and that he has been a licensed attorney since 1973, over thirty years. Mueller Aff., ¶¶ 4, 5. He states that he is familiar with the facts and allegations in this action, and that he has "reviewed pleadings filed in the above-entitled action, as well as pertinent memoranda, notes, correspondence and other documents reflecting events complained of in Plaintiffs' Complaint." Mueller Aff., ¶¶ 1, 7. He then describes the work performed by Mueller and Smith in regard to the patents at issue. Mueller Aff., ¶ 9. Thus, this is not a case where the expert has not familiarized himself with the record, as was the situation in <u>Monks v. General Electric Co.</u>, 919 F.2d 1189, 1193 (6th Cir. 1990). Mueller has also set forth the facts upon which he bases his opinion. <u>See</u> <u>Brainard</u>, 432 F.3d at 664. Paragraph 10 is more than a bare conclusory statement about an ultimate issue in the case. Therefore, the court will deny plaintiffs' motion to strike paragraph 10. However, the court notes that it would arrive at the same result on defendants' motion for summary judgment even if paragraph 10 is disregarded.

<u>II. Summary Judgment Standards</u>

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the

3

nonmoving party. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). <u>See also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

The Sixth Circuit Court of Appeals has recognized that <u>Liberty Lobby</u>, <u>Celotex</u> and <u>Matsushita</u> effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. <u>Street v. J. C. Bradford & Co.</u>, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in <u>Street</u> identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. <u>Id</u>. at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Id</u>. (quoting <u>Liberty Lobby</u>, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. <u>Id</u>. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"

4

Id. (quoting Matsushita, 475 U.S. at 586). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

III. Facts of the Case

A. The '696 Patent

The record reveals that in 1993, Mueller and Smith was retained by Dr. Ron Wiley to file a utility patent application with the USPTO for a protocol for the treatment of hypertension. The application was filed on July 14, 1993. In December of 1993, Isatec, Inc., a successor in interest to Dr. Wiley, was formed. On March 21, 1995, the USPTO issued U.S. Patent No. 5,398,696 ("the '696 patent") to Isatec, Inc., which changed its name in 1997 to MD Systems, Inc. On March 24, 1995, Jerry Mueller, an attorney at Mueller and Smith, wrote to Michael Smyser, president of Isatec (and later president of MD Systems), to inform him about the maintenance fees on the '696 patent which would be due three-and-a-half years, seven-and-one-half years, and eleven-and-one-half years from the filing date of the patent. Mueller informed Smyser that the firm had marked its records for call-up of these fees, and would write Smyser for approval of payment of these fees when they were due. He also suggested that Smyser mark his own records as a reminder of these fees. According to Mueller, there was no ongoing attorney-client relationship with MD Systems for the handling and payment of future maintenance fees. It is the practice of the firm to send courtesy reminders when fees were due. The firm does not

charge for these reminders, and the notices also serve as a solicitation by the firm to be retained to handle the payment of the fees.  By letter dated July 15, 1998, Smyser wrote to Mueller noting that the maintenance fee on the '696 patent was due soon, and asking whether Mueller and Smith or MD Systems should follow through with the payment.  On or about September 21, 1998, MD Systems retained Mueller and Smith to pay the three-and-a-half-year maintenance fee for the '696 patent, and the fee was paid.

On March 31, 2005, Smyser notified Gerald Smith of Mueller and Smith that the '696 patent had expired on March 21, 2003, due to the failure to pay the seven-and-a-half-year maintenance fee during the six-month grace period commencing on September 21, 2002.  On April 7, 2005, at the request of MD Systems, and as attorney of record with the USPTO for the patents, Mueller and Smith drafted and filed a petition with the USPTO to accept delayed payment of the maintenance fee.  According to the petition, the customary notice was not sent to MD Systems because of two clerical errors at the firm.  On August 16, 2005, the petition was denied.  On August 25, 2005, Mueller and Smith filed a request for reconsideration of that decision.  No further services were performed for MD Systems by Mueller and Smith after that date.  The request for reconsideration was denied on March 2, 2006.

B. The '385 Patent

In 1994, Isatec retained Mueller and Smith to file a second utility patent application with the USPTO related to the CardioGrip device, resulting in the issuance of U.S. Patent No. D403,385 ("the '385 patent").  This patent is not the subject of plaintiffs' malpractice claim.

6

C. The '639 Patent

On March 6, 1998, MD Systems retained Mueller and Smith to file an application with the USPTO for a patent relating to the CardioGrip device. On May 19, 1999, the USPTO issued U.S. Patent No. 5,904,639 ("the '639 patent"). Gail E. James on behalf of Gerald L. Smith of Mueller and Smith sent a letter dated September 18, 2002, to Smyser, as president of MD Systems, reminding him that the window for paying the three-and-a-half-year maintenance fee for the '639 patent opened on the due date of November 19, 2002, and that the fee had to be paid prior to May 18, 2003. The letter informed Smyser of the firm's fees for handling the payment, and asked for instructions as to whether he wished the firm to make the payment. The letter advised that failure to pay the fee would result in the patent being abandoned. Despite this reminder letter, the fee was not paid prior to May 18, 2003, and the '639 patent was inadvertently abandoned as of May 18, 2003. However, a petition to revive the '639 patent was filed bu Mueller and Smith within a month of that date, and the '639 patent was revived.

D. Assignment of the Patents

In early 2002, Steven M. Wood, president of Intermountain Management Group, contacted MD Systems about plans for marketing the CardioGrip device. On December 16, 2003, MD Systems and Intermountain Management Group signed a letter of intent providing that Intermountain Management Group would form two corporations, CardioGrip, Inc. and CardioGrip Intellectual Property Holding Co. ("CardioGrip IPH"). Under the letter of intent, MD Systems was to provide CardioGrip, Inc. with a field-exclusive license to use all intellectual property related to the CardioGrip product line.

CardioGrip IPH was to serve as a holding company for any patents, copyrights and other intellectual property related to the CardioGrip device.

On March 10, 2004, CardioGrip, Inc., CardioGrip IPH, and MD Systems entered into two agreements under which MD Systems gave licencing rights under the '696, '639 and '385 patents to CardioGrip and CardioGrip IPH.  Mueller and Smith was retained by MD Systems on a limited basis to review the license agreement between MD Systems and CardioGrip prior to the signing of the agreement.  However, MD Systems was represented by another law firm for these transactions, and other attorneys, not attorneys with Mueller and Smith, drafted the documents.  On January 24, 2005, MD Systems entered into an agreement with CardioGrip IPH under which MD Systems assigned the '696, '639 and '385 patents to CardioGrip IPH.  Jerry Mueller stated in his affidavit that Mueller and Smith was unaware that the patents were to be transferred from MD Systems to CardioGrip.  Mueller and Smith never represented or performed legal services for the plaintiff companies or Steven M. Wood.

The plaintiffs retained Epstein, Becker and Green, P.C. as their patent counsel on March 21, 2005.  Soon thereafter, the plaintiffs filed two actions against MD Systems in the United States District Court for the District of Idaho, Case Nos. CV-05-354-E-BLW and CV-05-444-E-BLW, which were consolidated.  On April 11, 2006, plaintiffs filed a first amended complaint which added Mueller and Smith as a defendant in the action and added Count VIII, a claim of negligence (legal malpractice).  Mueller and Smith filed a motion to dismiss on the basis of lack of personal jurisdiction.  In a decision filed on January 4, 2007, Chief Judge

8

B. Lynn Winmill granted the motion to dismiss. See Defendants' Motion for Summary Judgment, Ex. F. The plaintiffs noted that by reason of USPTO regulations, Mueller and Smith received a power of attorney to represent MD Systems when MD Systems applied for the patents. However, the court rejected plaintiffs' argument that this power of attorney created an attorney-client relationship between the plaintiffs and Mueller and Smith. The court also rejected the argument that the assignment of the patents by MD Systems to the plaintiffs also resulted in an assignment of the attorney-client relationship between MD Systems and Mueller and Smith. The court also noted that there was "no evidence of any attorney-client agreement between the firm and Cardiogrip" and that "the firm has had no contact whatsoever with Cardiogrip." Ex. F, pp. 5, 6.

Plaintiffs filed the instant action against Mueller and Smith on November 22, 2006. On December 27, 2006, plaintiffs filed their first amended complaint, adding Mueller, Smith and Matto, L.P.A., as a defendant.

IV. Plaintiffs' Malpractice Claim

To establish a cause of action for legal malpractice under Ohio law, a plaintiff must establish the following elements: (1) an attorney-client relationship giving rise to a duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. Vahila v. Hall, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997). As a general rule, an attorney owes no duty to third-party non-clients. Scholler v. Scholler, 10 Ohio St.3d 98, syllabus para. 1, 462 N.E.2d 158 (1984). However, a plaintiff who cannot demonstrate that a traditional attorney-client relationship existed may

nevertheless maintain a cause of action for legal malpractice if the evidence shows either: (1) that the plaintiff is in privity with the client of the defendant attorney, or (2) that the defendant attorney acted maliciously. Id.

Plaintiffs do not argue that they have ever had a direct attorney-client relationship with defendants. Rather, they argue that, by virtue of the assignment of the patents, they are in privity with MD Systems and may rely on the attorney-client relationship between MD Systems and the defendants to establish that element of their claims.[2]

"For legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." Sayyah v. Cutrell, 142 Ohio App.3d 102, 111-12, 757 N.E.2d 779 (2001). In Scholler, the Ohio Supreme Court held that the minor child was not in privity with his mother for purposes of the child's action for malpractice against the mother's attorney who negotiated a separation agreement for failure to adequately investigate the father's financial circumstances, resulting in lower child support payments. The court noted that the interests

---

[2]The mere fact that the patents were assigned to plaintiffs is not sufficient. The district court in the Idaho action correctly held that the assignment of a patent does not assign the attorney-client relationship along with it. See Telectronics Proprietary, Ltd. v. Medtronic, Inc., 836 F.2d 1332, 1338 (Fed.Cir. 1988)(stating that "attorneys represent clients–not legal positions or patents"); In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 90 (5th Cir. 1976)(assignment of patent does not assign counsel along with it). Likewise, the court properly held that the power of attorney created by virtue of the patent application did not create an attorney-client relationship. See Sun Studs, Inc. v. Applied Theory Associates, Inc., 772 F.2d 1557, 1568 (9th Cir. 1985). These holdings by the district court in the Idaho action constitute the law of the case in this action. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 816 (1988)(the law of the case doctrine applies to the decisions of a coordinate court in the same case).

of the wife in negotiating a separation agreement to achieve a fair division of marital assets are not concurrent with the interests of the child to receive support. Scholler, 10 Ohio St.3d at 104. In Simon v. Zipperstein, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987), the Ohio Supreme Court held that a potential beneficiary under a will had no vested interest in the estate, and could not sue the attorney who prepared the will for the client-decedent. See also Elam v. Hyatt Legal Serv., 44 Ohio St.3d 175, 618, 541 N.E.2d 616 (1989)(privity existed where the remaindermen's interests in the estate were vested); Lewis v. Star Bank, N.A., Butler County, 90 Ohio App.3d 709, 711, 630 N.E.2d 418 (1993)(vesting gives the necessary privity to sue); Columbus Consolidated Agency, Inc. v. Wolfson, 70 Ohio App.3d 467, 470, 591 N.E.2d 385 (1990)(purchasers of GD & L Dry Cargo Container Program not in privity with offerors of program who consulted law firm and received erroneous opinion that program did not constitute the sale of securities).

In determining privity, the court must first examine the interest that the original attorney-client relationship was intended to protect and then compare it to the interest of the third person bringing suit for the alleged legal malpractice. Scholler, 10 Ohio St.3d at 104. Plaintiffs argue that the representation of MD Systems by Mueller and Smith was designed to protect the patents, and that since plaintiffs also have an interest in the validity of the patents, their interests are the same as those of MD Systems. Plaintiffs list the following acts of Mueller and Smith as being acts for the purpose of protecting the patents: (1) Mueller and Smith filed applications for the '696 and '639 patents; (2) Mueller and Smith continued to represent MD

11

Systems and remained as counsel of record in the USPTO after the patents were assigned to plaintiffs; (3) Mueller and Smith counseled MD Systems on the agreement to license the patents to plaintiffs; and (4) Mueller and Smith filed petitions to revive the '639 and '696 patents after they expired, and filed a petition to reconsider the denial of the request to revive the '696 patent.

Plaintiffs' characterization of the nature of the representation provided by Mueller and Smith is overly broad.  It does not necessarily follow that all aspects of Mueller and Smith's representation of MD Systems were for the purpose of protecting the validity of the patents.  Rather, each act of representation must be examined.  As to the first instances of representation, the filing of the original applications for the patents, these were not actions designed to protect the validity of the patents, but rather to obtain them.[3]  In addition, no negligence on the part of Mueller and Smith has been alleged in regard to the applications for the patents.  Therefore, even assuming privity of representation between plaintiffs and MD Systems as to the application for the patents, this would not support plaintiffs' malpractice claim.

Plaintiffs allege that Mueller and Smith continued to represent MD Systems after the patents were obtained.  However, defendants have presented evidence that the firm's representation of MD Systems was not continuous.  Jerry Mueller stated in his second affidavit that the firm was retained to represent Dr. Wiley for the purpose of applying for the '696 patent, and that when the patent was issued, that attorney-client relationship ended.  Reply

---

[3]Although Mueller and Smith was retained by MD Systems to obtain the '639 patent, the firm was retained by Dr. Wiley to file the application for the '696 patent. Plaintiffs have not demonstrated how they are in privity with Dr. Wiley.

Ex. A (hereinafter "Second Aff."), ¶ 9a.  Mueller stated in his first affidavit that the firm was retained by MD Systems to file the application for the '639 patent.  Defendants' Motion for Summary Judgment, Ex. B (hereinafter "First Aff."), ¶ 9b. Defendants maintain that this representation concluded when the '639 patent was issued.  Plaintiffs have presented no evidence in contradiction.

Mueller further stated that Mueller and Smith did not thereafter assume a continual obligation to represent MD Systems for the purpose of paying maintenance fees.  Reminder notices were sent as a courtesy, free of charge, and as a solicitation by the firm to be retained for the purpose of handling the fee payment. Second Aff., ¶ 11.  MD Systems retained Mueller and Smith on one occasion in September of 1998 to pay the maintenance fee on the '696 patent.  Second Aff., ¶ 9d.  However, Mueller and Smith maintains that once that fee was paid, that representation ended. Again, plaintiffs have offered no evidence which would establish that Mueller and Smith had a continuous or ongoing attorney-client relationship with MD Systems for the purpose of paying the maintenance fees on the patents in question.

The mere fact that after the issuance of the patents, Mueller and Smith continued to be listed on the docket of the USPTO as counsel of record as a result of its filing of the original patent applications is not sufficient to establish that an attorney-client relationship existed between Mueller and Smith and MD Systems after the patents were issued.  The duty of competent representation was not owed to the patents themselves or to every subsequent holder of the patents, but rather to MD Systems.  As noted <u>supra</u>, footnote 2,

13

neither the fact that a power of attorney was given to Mueller and Smith by reason of its filing of the patent applications, nor the assignment of the patents created an attorney-client relationship between Mueller and Smith and the plaintiffs.

Plaintiffs also note that Mueller and Smith advised MD Systems concerning the proposed licensing agreements. Mueller stated in his affidavit that Mueller and Smith was retained by MD Systems for the limited purpose of reviewing documents prepared by another law firm and relating to the proposed licensing agreements between MD Systems and the plaintiffs. He stated that Mueller and Smith was not aware that the patents were to be transferred from MD Systems to CardioGrip. First Aff., ¶ 9f. This is corroborated by the fact that the licensing agreements were signed on March 10, 2004, but the document assigning the patents was not signed until January 24, 2005. Defendants contend that once the firm's review of the licensing agreements was accomplished, the firm's representation of MD Systems again concluded, and there is no evidence to dispute this position.

The review of the licensing agreements was not aimed at protecting the validity of the patents, but rather was intended to effectuate the licensing of the patents by MD Systems. The interests of MD Systems in having Mueller and Smith review the licensing agreements were not the same as plaintiffs' interests in the transaction. The representation by Mueller and Smith was obtained to protect the financial and business goals of MD Systems under the licensing agreements. As the licensees, plaintiffs had distinct financial and business goals. Mueller and Smith owed a duty of complete and undivided loyalty to MD Systems in regard to

14

this transaction. Plaintiffs' privity argument as to this particular representation of MD Systems by Mueller and Smith would place the firm in the position of owing a duty to parties with divided and disparate interests, which is not permissible under the Canon 5 of the Ohio Code of Professional Responsibility. See Lewis, 90 Ohio App.3d at 712-713 (holding that beneficiaries of trust had no right to sue law firm for errors for pre-death advice given to settlor of trust because firm owed duty of complete and undivided loyalty to the settlor). Further, plaintiffs do not claim that Mueller and Smith were negligent in reviewing the licensing agreements. Therefore, even assuming that plaintiffs' interests in the soundness of this phase of the representation was in privity with those of MD Systems, this would not further plaintiffs' malpractice claim.

Plaintiffs also rely on the fact that Mueller and Smith was retained by MD Systems to file petitions to revive the '696 and '639 patents, and a petition for reconsideration of the decision denying the petition to revive the '696 patent. The petition to revive the '639 patent was filed within a month of May 18, 2003, and was successful. The petition was filed long before the patent was assigned to plaintiffs on January 24, 2005. However, even assuming that plaintiffs are in privity with MD Systems for purposes of the representation provided in connection with the petition to revive the '639 patent, no negligence is alleged in connection with Mueller and Smith's filing of that petition.

Plaintiffs also note that Mueller and Smith was retained by MD Systems to file the petition to revive the '696 patent, and argue that Mueller and Smith should have filed the petition sooner,

15

despite evidence that Mueller and Smith first learned of the non-payment of fees on March 31, 2005.  First Aff., ¶ 9h.  The petition was filed on April 7, 2005, and the request for reconsideration was filed on August 25, 2005.  In April of 2005, MD Systems was no longer the patent holder, having assigned the patent to CardioGrip IPH on January 24, 2005.  MD Systems retained Mueller and Smith to file the petition because the firm was attorney of record at the time of non-payment, and possessed information relevant to the non-payment of the fee which the law required to be included in the petition.  First Aff., ¶ 9g.

The interests of MD Systems in filing the petition were not the same as plaintiffs' interests.  MD Systems was no longer the holder of the patent, and its interests in the revival of the patent stemmed from whatever impact the expiration of the patent would have on its licensing fees due from the plaintiff, and the risk of litigation against MD Systems by plaintiffs, which was later fulfilled.  In contrast, plaintiff CardioGrip IHP was the holder of the patent in April of 2005, when the petition was filed, and plaintiffs' interests in the revival of the patent were related to their ability to exercise exclusive manufacturing and marketing rights to the device protected by the patent.  In filing the application to revive the patent, Mueller and Smith owed a duty of undivided loyalty to MD Systems, <u>Lewis</u>, 90 Ohio App.3d at 712-713, and plaintiffs cannot be deemed to have been in privity with MD Systems in regard to this instance of representation.

In addition, in determining issues of privity and vesting, the status of those seeking to sue must be examined at the time the claimed mistakes occurred.  <u>Lewis</u>, 90 Ohio App.3d at 712.  <u>See</u>

16

also, Peleg v. Spitz, No. 89048 (8th Dist.), 2007 WL 4200611 at *2-5(Ohio App. Nov. 29, 2007)(noting that privity is lacking where the plaintiff held only a potential interest at the time the alleged malpractice occurred); Hahn v. Satullo, 156 Ohio App.3d 412, 429, 806 N.E.2d 567 (2004)(concluding that at the time of the alleged act constituting malpractice, plaintiffs were not in privity with attorney's clients).

In the instant case, defendants allegedly committed malpractice by failing to make sure that the maintenance fees for the '696 and '639 patents were timely paid so that the patents would remain in effect. The '696 patent expired on March 21, 2003, due to the failure to pay the seven-and-a-half-year maintenance fee during the six-month grace period commencing on September 21, 2002. The '639 patent expired on May 18, 2003, but a petition to revive that patent was filed within a month of that date, and the patent was revived. The patents were not assigned to CardioGrip IHP until January 24, 2005. Plaintiffs had no vested interest in the patents until long after the alleged acts of malpractice and the expiration of the patents occurred. The failure to pay the fees even predates the December 16, 2003, letter of intent and the March 10, 2004, licensing agreements between plaintiffs and MD Systems.

The evidence concerning the representation of MD Systems by Mueller and Smith fails to establish that MD Systems and plaintiffs had shared or similar interests in the purpose of the representation at the time of the representation and the alleged acts of malpractice so as to result in plaintiffs being in privity with MD Systems, and plaintiffs have failed to produce evidence sufficient to create a genuine issue of fact in that regard.

Plaintiffs have not shown that they could produce evidence sufficient for a trier of fact to conclude that the defendants owed a duty to them, and defendants are entitled to summary judgment on plaintiffs' claims.

## V. Collateral Estoppel

Defendants also argue that they are entitled to summary judgment on the grounds of collateral estoppel, contending that the issue of the existence of an attorney-client relationship was resolved against plaintiffs in the decision on the motion to dismiss filed in the Oklahoma action.  Since the court has concluded that defendants are entitled to summary judgment based on the absence of a genuine issue of fact on an essential element of plaintiffs' claim, the court need not address this branch of defendants' motion.

## IV. Conclusion

In accordance with the foregoing, defendants' motion for summary judgment (Doc. No. 20) is granted.  Plaintiffs' motion to strike (Doc. No. 26) is denied.  Plaintiffs' motion (Doc. No. 23) for leave to file a second amended complaint adding Jerry K. Mueller as a defendant in his individual capacity to the malpractice claim is denied, since amendment would be futile in light of the court's ruling on defendants' motion for summary judgment.  The clerk shall enter judgment in favor of the defendants.


Date: January 14, 2008          _____s\James L. Graham_____
                                James L. Graham
                                United States District Judge

18